Good morning, Your Honors. My name is Bernadette Willick-Connolly, and I'm appearing on behalf of Petitioner Mr. Marlito Biala. Go ahead and pull that microphone down a little bit closer to you. Is this better? Yes, thank you. Okay, sorry. And I would like to reserve one minute of rebuttal time. All right. The biggest issue in this case is the competency issue. Mr. Biala, at age 35, suffered a severe stroke, which left him basically incapable of communication. He has aphasia. He has trouble moving around, taking care of himself. And at the immigration court hearing, there was not a competency hearing as such, but the record shows that the judge basically believed that he was incompetent and then moved over to the safeguards, the safeguards for people who are incompetent, to make sure that he received a full and fair hearing. Now, what is interesting is that even though in the criminal system these safeguards have existed for a very long time, there are very few safeguards in the immigration context. And the problem is that the Supreme Court has actually recognized that deportation is a penalty, not a punishment, but a penalty that can sometimes be more severe than a criminal penalty. And also often deportation hearings are the direct result of a criminal hearing. And in our case, Mr. Biala was put into removal proceedings because of his criminal record. What is it that you're complaining about, that the I.J. didn't do a sufficient inquiry into his mental incompetency or that the I.J. erred in not dismissing the proceedings because of his mental incompetency? At this point, Your Honor, I think that our position is that the judge should have disterminated the case. And what authority do you have that the immigration judge has the authority to terminate the proceedings? Your Honor, there was a recent case that was decided by the BIA. Now, I acknowledge that in the judge's bench book, they say it's an open question. So the judge's bench book itself does not say there is no jurisdiction. They just say it's an open question. And the BIA has held in matter of Ramiro Sanchez-Herbert in 26 INA decision, that was a 2012 case, that an I.J. may terminate proceedings when DHS cannot sustain the charges. That's not the case here. Or in any other specific circumstances consistent with the law and applicable regulations. Now, in matter of MAM, the BIA outlined some safeguards. And one of them was administrative closure, which is different than termination. But M&M also said that that was not an exclusive list. And our position is that under M&M, one of the safeguards is to terminate. And that the judge under Sanchez-Herbert in conjunction with the M&M case would have jurisdiction to terminate. So we would request that the case be remanded so that the judge can make a finding, number one, whether or not she has jurisdiction to terminate, which was never addressed. She just said no. Number two, if she feels she has no jurisdiction, then that would be an appealable issue. But if she finds she has jurisdiction but then declines to terminate, then we have to see whether there would be an abuse of discretion. So I think it's very important that this case be remanded to implement the safeguards outlined in M&M. And if not, at the very minimum, administrative closure should be addressed. That was not addressed. It was never brought up. And now M&M, which was decided after we had the case before the immigration judge, says that administrative closure is actually a procedural safeguard. And in Mr. Biala's case, that was never addressed. So then if not for termination, it should be remanded for a determination whether this case should be administratively closed. Again, while deportation is technically not a criminal proceedings, the stakes are so high that the respondents should be afforded the same safeguards as defendants in a criminal case. The Supreme Court has stated in a decision, Padilla v. Kentucky, that basically the boundaries between those cases are dissolving. They said, as the court in Padilla said, although removal proceedings are civil in nature, deportation is nevertheless intimately related to the criminal process, just as in our case. Our law, the court continues, has enmeshed criminal convictions and the penalty of deportation for nearly a century. Now in criminal cases, if you are incompetent, you cannot be tried. What do we have in deportation cases? Until the 2011 case in MAM, there was not even guidance what to do. There are very few regulations in the INA that pertain to the protection of people with mental disabilities or incompetency in proceedings. Now as the Padilla court continued, and importantly recent changes in our immigration law have made removal nearly an automatic result for a broad class of non-citizen offenders. Thus we find it most difficult to divorce the penalty from the conviction in the deportation context. Deportation as a consequence of criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. Here the deportation was a direct consequence of the criminal conviction. At the criminal hearing, Mr. Biala was not incompetent. He did not have his stroke yet. Had he had the stroke, he would not have been tried. And then there would have been no criminal conviction that led to the deportation charges against him. Now he is in a position where he was competent at the criminal hearing, but incompetent in the removal proceedings. And to a point where he did not testify coherently, his expert, Dr. Dahl, stated that he did not think that he was really able to understand the procedures. In fact, Mr. Biala said, I don't even remember my convictions. So he is now being deported on the basis of a conviction which he doesn't remember. And the expert also said that if he were to be at the airport, let out at the airport, he would not even understand what he would be doing there. Well, he had counsel, so he had the opportunity to present evidence through counsel and to cross-examine witnesses, right? So was the lack of ability to fully assist his counsel, did that result in any prejudice? To him, can you articulate what prejudice resulted? Well, Your Honor, unlike in criminal cases where the defendants usually don't play an active role, respondents in an immigration court case play a very active role. They testify, they talk with counsel about what witnesses to present and so on. Mr. Biala was not able to effectively communicate with counsel. And this was a withholding of removal case where testimony by the respondent is very important to articulate his subjective fear, for example, of returning. When an attorney can put in evidence, cross-examine, and cross-examine and call expert witnesses, the attorney with an incompetent client cannot get testified for the client or, you know, prepare for the case. And also the INA gives the alien the right to do all of this. And what is very perturbing, for example, under the regulations is they say, well, you know, if you have a counsel, I'm sorry, if you are incompetent, you can have a friend, you can have a family member or an attorney. Well, we don't know how competent a friend would be, for example, to speak on his behalf. And most disturbing, if none of this is there, guess who is going to be in line to represent him? The custodian. That means if a client is in detention and he is incompetent, he would be represented by DHS, which is the very agency that wants to deport him. So I think that the safeguards are not enough as articulated in the regulations. They are not helpful to understand, for example, what is incompetence. It's not even defined in the regulations. Now, the BIA has made a nice, I think, first effort in the MAM case to help with incompetency hearings, but it's not going far enough. And we have to have to develop, you know, what are the safeguards. We have to develop a body of case law, because this is just an evolving area. So what we would request is to send it back to the BIA and to the immigration court to determine in the first instance whether this case should be terminated, is termination within the power of the immigration judges, is termination an appropriate safeguard to protect incompetent clients. Or in the very alternative, to see whether there is a basis for administrative closure, which was specifically mentioned in the MAM case. So there is also another potential remedy that a respondent has, and that is to request prosecutorial discretion. This was done in this case in April 2012. And that is still pending. So you are in discussion with the government about prosecutorial discretion? Yes. So all of these requests were made. But again, two years have gone by and no decision on it. So I think it's time that the case is sent back to the BIA and hopefully remanded to the immigration judge so that we can get some clarity here. And I think this is a good case to develop the case law. Because this was decided before the MAM case was decided. All right. Thank you very much, counsel. May it please the court. My name is Jennifer Singer and I represent the United States Attorney General, the respondent in this matter. Your honors, Mr. Biala's five criminal convictions ultimately led to the initiation of the removal proceedings in this case. And represented by counsel before the immigration judge, the same counsel is represented by the board and the same counsel who represents him now before this court, he conceded his removability but requested termination on the basis of his alleged incompetency, which in this case is reduced ability to communicate due to a stroke he suffered. However, the issue in this case is not whether he is incompetent for purposes of the immigration proceedings, but whether there were appropriate safeguards applied in this case to enable him to have a full and fair hearing as is required by the due process clause. And under the circumstances of this case, the safeguards that were employed and utilized during the immigration proceedings did afford him an opportunity to reasonably present his case and are consistent with the statute. They are consistent with matter of MAM, which was decided after the proceedings in this case, but are still nonetheless consistent with the principles that were articulated. And for that reason, remand for in light of MAM is not necessary here, because the safeguards were sufficient. What do you think, case impairments in this case seem fairly severe, so what do you make of MAM's application in this case where somebody has impairments so severe that they're not able to meaningfully assist the case? Well, sure, you can say, you know, what the government's required to do is to make sure that procedural safeguards are in place, but part of the safeguards is to ensure that somebody understands the proceedings and can assist in presenting evidence, and if let's just not even take the facts of this case, but let's take a situation where somebody really isn't able to meaningfully participate in the proceedings. If somebody in any way in the family then hires a lawyer, but the lawyer isn't able to effectively deal with the petitioner, then what does the government make of that situation? I would begin by answering your question in stating that MAM contemplates a very fact-specific case-by-case analysis of the particular individual circumstances, the impairment that person suffers, and the other circumstances surrounding that particular case. Here, for example, despite Mr. Biala's limited ability to potentially discuss this case with his attorney, he did have four additional witnesses testify on his behalf, four of whom were close relatives of his son, daughter, and a brother who know him very intimately, testified that they are able to communicate with him, and were able to essentially stand in for him and articulate his fears. Well, under those circumstances, I think that because they were present and able to testify, any limited capacity he had in communicating was overcome by those witnesses' testimony. And he claims that his attorney or his daughter, son, and the remaining witnesses weren't able to discuss the potential country conditions in the Philippines or articulate his fears, but again, the safeguards were in place. Such as the submission of extensive documentary evidence, country conditions evidence, which spoke to the conditions in the Philippines, and the other witnesses testified to the fears that he claims he has. And Mr. Biala did take the stand, and in his way was able to articulate his fear. The immigration judge modified her questioning to accommodate his limited ability to communicate, asking questions to his attorney. And Mr. Biala was able to answer those questions directly and more in a manner more straightforward, and he was able to answer them. And on a reading of the testimony between Mr. Biala and the immigration judge, it doesn't appear that she, the immigration judge, had any difficulty in understanding what he was saying during his testimony. So in terms of MAM, it really is a case-by-case basis, and the INA does contemplate situations in where an alien might not even be present for the proceedings. But again, the facts here, the safeguards employed, were sufficient under MAM. Can I ask you a slightly different question? Yes, your honor. Did MAM expand the circumstances in which proceedings can be terminated because someone's mentally incompetent? I don't think so. Termination wasn't an issue in matter of MAM, and I don't think termination is an appropriate remedy in this case. MAM only addressed cases in which, despite the application of safeguards, where questions and concerns still remain, it opened for the possibility of other avenues, such as administrative closure, in cases where, despite the safeguards, that the concerns still remain. But again, in MAM, the board did suggest that the application of administrative closure is a possible remedy. It was contemplated to be something more limited in nature and not indefinite in time frame and would be utilized for purposes of perhaps enabling the alien to get more medical care to maybe diminish the impairment that would make it able for him or her to, at a later point, more effectively present his or her case. Maybe I used the wrong term then. I said termination. You're saying administrative closure. But as I understand the petitioner's arguments this morning, it's that, look, at the time the IJ in this case ruled, you know, he or she might have felt much more constrained in terms of granting administrative closure than would be the case now under MAM, so why don't you at least send it back for a reassessment of this petitioner's case in light of the new standard from MAM. You're obviously arguing against that. I'm just trying to figure out why would we not at least do that. To address your question in three points. First, I don't think remand is necessary under MAM since the safeguards were appropriate. Thereby because they were appropriate, the issue of whether termination was an appropriate remedy would be moot essentially. So remand for that purpose to discuss whether termination is even available to an immigration judge jurisdictionally would be appropriate. Again, the safeguards. I think the point is to give the IJ and BIA the benefit of in re MAM in considering what the appropriate resolution for this case is. The IJ didn't have the benefit of that. So I think to Judge Watford's point, what's wrong with giving the IJ an opportunity to consider whether administrative closure would be appropriate in light of in re MAM. If the, if your honors were inclined to do so, I can understand that. However, I would answer that by saying that MAM did open the possibility for administrative closure as a possible, an additional safeguard. But reading the last sentence or the last paragraph of the decision of MAM, the board kind of caveats that with administrative closure not being a, it's not an indefinite decision. It's not a definite remedy. It's contemplated to be something more limited in time frame and scope with the purposes of having an alien perhaps get additional medical care so any impairment would be diminished. Under these circumstances, any additional medical care I don't think would help Mr. Biala any further in his ability to present his case. So I think remand for that purpose would be unnecessary. You're asking us to basically make that determination on behalf of the board and the IJ. We're not in a very good position to do that, are we? I mean, we're, I would think that's something much more appropriate for the IJ in the first instance to exercise some discretion on, no? In the first instance, yes. But again, I think that your honors still could find remand unnecessary given all the procedural safeguards that were outlined in MAM and those that were employed here entirely consistent with those outlined in MAM. So I think your honors could find that remand would be unnecessary because the appropriate safeguards were in place. Could we just follow up on something that counsel said? I guess some discussions about whether prosecutorial discretion is appropriate here have already been undertaken. Is this a case that you think we should send to our mediation program? Would that be an appropriate outcome? At this point, I'm not entirely sure if that would be the appropriate outcome. Given we've been in discussions with DHS and they're still reviewing the case. The case is kind of tricky because there's, you know, some serious criminal convictions and also Mr. Biala's stroke. So at this point, it's still pending, they're still reviewing it, and no final word has been communicated to me regarding DHS's ultimate discretionary determination to exercise its prosecutorial discretion. We have a very vibrant mediation program and sometimes it helps. To have a neutral talk to the parties about their respective positions. It sounds like you've been in discussions for quite a while. And I recognize given the extent of the criminal history here that normally it wouldn't be appropriate for mediation consideration. But in light of the stroke and all these other issues, that might be a good option. Perhaps that might be an appropriate option here then. All right, thank you very much. Thanks, Your Honors. Just a few points. First of all, I think mediation is a great idea. If the government is amenable to it. Because maybe it can be resolved and then it doesn't have to be going back and remanded and so on. If prosecutorial discretion would work, then end of story. So I think that's a good thing. Then also regarding counsel's argument about the safeguards. Again, not all safeguards were employed. And one very important one that was argued below was termination of the DHS's ultimate discretionary determination. Which could be expended under the holding of MAM. Or one that is now available under MAM is administrative closure. And that should be addressed. And also the immigration judge can now administratively close the case, even if one of the parties objects. So it used to be that both parties had to agree to the administrative closure. But now there is a case matter of Arvitisian that says that both parties have to agree to the administrative closure. And that only that it can be granted even if one party opposes. So I think that there is also a recognition by the BIA on how important the tool of administrative closure is. And I think that the BIA and the immigration judge should have an opportunity to address whether or not this is appropriate in this case. All right. Thank you very much. We have your argument in hand. Thank you both sides very much for your arguments in this matter.
judges: Noonan, Nguyen, Watford